# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| JEFFREY P. AUGENSTEIN AND STEPHANIE R. AUGENSTEIN, | ) ) ) | Case No. 2:10 cv 191 |
| Plaintiffs, | ) ) | Judge Marbley |
| vs. | ) ) ) | Magistrate Judge King |
| COLDWELL BANKER REAL ESTATE LLC, NRT LLC, AND NRT COLUMBUS, LLC, | ) ) ) ) ) | **DEFENDANT'S MOTION TO DISMISS** |
| Defendants. | ) ) ) | |

Defendant NRT Columbus, LLC hereby moves pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the Complaint with prejudice.

The grounds for this motion are that the Complaint fails to plead sufficient facts showing that plaintiffs are entitled to the relief sought, as is required by Rule 8(a)(2); and that it fails to state a claim upon which relief may be granted, as is required by Rule 12(b)(6).

This motion is based upon all of the files, records, and proceedings in this action, and upon Defendant's Memorandum of Law in Support of Motion to Dismiss that is being submitted herewith.

Respectfully submitted,

/s/ Erica L. Calderas

OF COUNSEL:

HAHN LOESER & PARKS LLP

Erica L. Calderas (#0064064) (Trial Attorney)
elcalderas@hahnlaw.com
200 Public Square, Suite 2800
Cleveland, OH 44114-2316
Phone:  216.274.2533
Fax:  216.241.2824

Stephen E. Chappelear (#0012205)
sechappelear@hahnlaw.com
65 East State Street, Suite 1400
Columbus, OH 43215
Phone:  614.221.0240
Fax:  614.221.5909

Wendy J. Wildung (MN Bar #117055)
(*pro hac vice*)
wwildung@faegre.com
200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Phone: 612.766.7000

FAEGRE & BENSON LLP

*Attorneys for Defendants Coldwell Banker Real Estate LLC, NRT LLC, and NRT Columbus, LLC*

- 2 -

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| JEFFREY P. AUGENSTEIN AND | ) | Case No. 2:10 cv 191 |
| STEPHANIE R. AUGENSTEIN, | ) | |
| | ) | Judge Marbley |
| Plaintiffs, | ) | |
| | ) | Magistrate Judge King |
| vs. | ) | |
| | ) | |
| COLDWELL BANKER REAL | ) | **DEFENDANT'S** |
| ESTATE LLC, NRT LLC, AND | ) | **MEMORANDUM OF LAW** |
| NRT COLUMBUS, LLC, | ) | **IN SUPPORT OF** |
| | ) | **MOTION TO DISMISS** |
| | ) | |
| Defendants. | ) | |
| | ) | |

OF COUNSEL:

HAHN LOESER & PARKS LLP        Erica L. Calderas (#0064064) (Trial Attorney)
                               elcalderas@hahnlaw.com
                               200 Public Square, Suite 2800
                               Cleveland, OH  44114-2316
                               Phone:  216.274.2533
                               Fax:  216.241.2824

                               Stephen E. Chappelear (#0012205)
                               sechappelear@hahnlaw.com
                               65 East State Street, Suite 1400
                               Columbus, OH  43215
                               Phone:  614.221.0240
                               Fax:  614.221.5909

FAEGRE & BENSON LLP            Wendy J. Wildung (MN Bar #117055)
                               *(pro hac vice)*
                               wwildung@faegre.com
                               2200 Wells Fargo Center
                               90 South Seventh Street
                               Minneapolis, MN  55402-3901
                               Phone:  612.766.7000

                               *Attorneys for Defendants*

CLE - 2768385.1

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ........................................................................................... 1

II.  STATEMENT OF FACTS ........................................................................... 2

III. LAW AND ARGUMENT ............................................................................ 4

    A.   The Standards For Dismissal Under Rules 8(a)(b2) And
12(b)(6) ............................................................................................... 4

    B.   Plaintiffs Have Failed To State A Claim For Violation Of
Section 8(b) Of RESPA ...................................................................... 5

        1.   RESPA Section 8 ................................................................... 5

        2.   Judicial interpretations of Section 8(b) ................................ 6

        3.   The analytical framework adopted by the Sixth Circuit for RESPA ....... 8

        4.   The Administrative Fee does not violate Section 8(b) because
by its plain language, Section 8(b) covers only charges that are
split between two persons ...................................................... 9

        5.   Other persuasive authorities support the conclusion that the
Administrative Fee does not violate Section 8(b) of RESPA ................ 12

        6.   The 2001 HUD SOP is not entitled to deference .................................. 13

        7.   Plaintiffs' suggested interpretation of Section 8(b) would lead to
metaphysical inquiries and absurd results............................................. 15

    C.   Plaintiffs Have Failed To Plead An Adequate Factual Basis For
Their Alleged RESPA Claim.......................................................... 17

IV. CONCLUSION ........................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal,*
_ U.S.__, 129 S. Ct. 1937 (2009) ...........................................................................4, 5, 17

*Barnhart v. Sigmon Coal Co.,*
534 U.S. 428 (2002) ........................................................................................................11

*Battle Creek Health Sys. v. Leavitt,*
498 F.3d 401 (6th Cir. 2002) ..........................................................................................14

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ..........................................................................................4, 17, 18, 19

*Boulware v. Crossland Mortg. Corp.,*
291 F.3d 261 (4th Cir. 2002) ..............................................................................7, 11, 15, 16

*Brilliance Audio, Inc. v. Haights Cross Communications, Inc.,*
474 F.3d 365 (6th Cir. 2007) ............................................................................................9

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
467 U.S. 837 (1984) ....................................................................................................13, 14

*Crandon v. U.S.,*
494 U.S. 152 (1990) ........................................................................................................12

*Friedman v. Market Street Mortg. Corp.,*
520 F.3d 1289 (11th Cir. 2008) ........................................................................................7

*Haug v. Bank of America, N.A.,*
317 F.3d 832 (8th Cir. 2003) ..............................................................................7, 11, 14

*Hensley Mfg. v. ProPride, Inc.,*
579 F.3d 603 (6th Cir. 2009) ..............................................................................4, 17, 18

*In re Carter,*
553 F.3d 979 (6th Cir. 2009) ........................................................................8, 9, 10, 12, 13, 14

*Kruse v. Wells Fargo Home Mortg., Inc.,*
383 F.3d 49 (2d Cir. 2004) ..................................................................................6, 7, 14

*Krzalic v. Republic Title Co.,*
314 F.3d 875 (7th Cir. 2002) ..............................................................................7, 11, 15, 17

- ii -

*Limited, Inc. v. C.I.R.,*
  286 F.3d 324 (6th Cir. 2007)........................................................................9

*Martinez v. Wells Fargo Home Mortg., Inc.,*
  598 F.3d 549 (9th Cir. 2010)..................................................................7, 14

*Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union,*
  221 F.2d 644 (6th Cir. 1955)....................................................................2, 3

*Molosky v. Washington Mut. Bank,*
  No. 07-CV-11247, 2008 WL 183634 (E.D. Mich. Jan. 18, 2008) ...................11

*Morrison v. Brookstone Mortg. Co., Inc.,*
  No. 2:03-CV-729, 2006 U.S. Dist. LEXIS 73389, 2006 WL 2850522 (S.D. Ohio
  Sept. 29, 2006) ..................................................................................11, 14

*Nat'l Ass'n of Minority Contrs. v. Martinez,*
  248 F. Supp. 2d 679 (S.D. Ohio 2002) ............................................................3

*OfficeMax, Inc. v. U. S.,*
  428 F.3d 583 (6th Cir. 2005).........................................................................10

*Santiago v. GMAC Mortg. Group, Inc.,*
  417 F.3d 384 (3d Cir. 2005)...................................................................7, 14

*Sosa v. Chase Manhattan Mortg. Corp.,*
  348 F.3d 979 (11th Cir. 2003)........................................................................7

*Thornton v. Graphic Communication Conf. of the Int'l Brh. of Teamsters
  Supplemental Ret. and Disability Fund,*
  566 F.3d 597 (6th Cir. 2009)........................................................................14

*Tibbs v. Sebelius,*
  2010 U.S. Dist. LEXIS 42464 (S.D. Ohio Apr. 30, 2010) ...................................4

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,*
  552 F.3d 430 (6th Cir. 2008)..........................................................................4

*United States v. Mead Corp.,*
  533 U.S. 218 (2001)....................................................................................14

## FEDERAL STATUTES

12 U.S.C. § 2601(b)(4) ............................................................................1, 13

12 U.S.C. § 2607(b) ...........................................................................1, 6, 16

RESPA ............................................................................................................... passim

**RULES**

Fed R. Civ. P. 8(a)(2)............................................................................................4, 17

Fed. R. Civ. P. 12(b)(6) ...........................................................................................4

**REGULATIONS**

24 C.F.R. § 3500.14................................................................................................6

**OTHER AUTHORITIES**

HUD Real Estate Settlement Procedures Act Statement of Policy 2001-1, 66 Fed.
    Reg. 53,052 (Oct. 21 2001).................................................................6, 13, 14, 15

S. Rep. No. 93-866 ................................................................................................12

Webster's Ninth New Collegiate Dictionary .........................................................10

## I.     __INTRODUCTION__

Congress enacted the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. §§2601, *et seq.,* for the stated purpose of effecting "certain changes in the settlement process for residential real estate that will result in", among other things, "the elimination of  kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services."  12 U.S.C. §2601(b)(4).  In this action, the plaintiff-homebuyers assert an entirely manufactured claim  --  that they *overpaid* the defendant real estate broker for its services --  that falls outside the language, history, and purpose of the statute.

Plaintiffs purchased a home using defendant NRT Columbus, LLC, d/b/a Coldwell Banker King Thompson[1] ("Coldwell Banker"), as their real estate broker.  At the time of the closing, plaintiffs paid Coldwell Banker an administrative fee of $199 (the "Administrative Fee").  Coldwell Banker also received a portion of the sales commission paid by the sellers.  Plaintiffs have no complaints about the transaction or the services that they received from Coldwell Banker.  Yet they still sued Coldwell Banker, claiming that Coldwell Banker violated Section 8(b) of RESPA, 12 U.S.C. §2607(b), by charging, collecting, and retaining the Administrative Fee.

Plaintiffs do not allege that the Administrative Fee was a kickback or referral fee.  Rather, they assert that the Administrative Fee was "duplicative" of the real estate commission that Coldwell Banker received, and hence was "unearned". Coldwell Banker

---

[1]     The other two defendants named in the caption, Coldwell Banker Real Estate LLC and NRT LLC, are affiliates of NRT Columbus, LLC.  The parties have agreed to the dismissal of those defendants without prejudice.

- 1 -

moves to dismiss the Complaint because it is legally insufficient on two grounds, either of which is dispositive.

*First,* by its plain language, purpose, and history, Section 8(b) only prohibits allegedly "unearned" fees that are split or shared by a culpable settlement services provider with a culpable third-party.  A single settlement services provider like Coldwell Banker does not violate Section 8(b) by (allegedly) charging, collecting, and retaining too many fees, too much in compensation, or so-called "duplicative" fees or compensation.

*Second,* even if allegedly "unearned" fees charged, collected, and retained by a single provider could be found to violate Section 8(b), plaintiffs have not pleaded any facts to state such a claim.  On the key issues, the Complaint is conclusory, not factual.  The Complaint's only material *facts* are that plaintiffs "employed an agent of Defendants" in connection with their purchase of a home (Compl. ¶22), and paid *only* the Administrative Fee for the agent's services (*id.* at ¶7).  On these facts, there is no basis to infer that the Administrative Fee was either "duplicative" of other monies, or "unearned" by Coldwell Banker.

For these reasons, as set forth more fully herein, Coldwell Banker's motion to dismiss the Complaint should be granted.

## II.    STATEMENT OF FACTS

The following facts are based upon the Complaint, and upon the plaintiffs' Form HUD-1 Settlement Statement ("HUD-1") that is attached to the Complaint as Exhibit 1.  The Court may consider all documents attached to the Complaint, or referred to and relied upon in it, in deciding a motion to dismiss.  *Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union,* 221 F.2d 644, 647 (6th Cir. 1955).  Allegations that are

- 2 -

contradicted by such documents are not accepted as true. *Id.*; *Nat'l Ass'n of Minority Contrs. v. Martinez,* 248 F. Supp. 2d 679, 681 (S.D. Ohio 2002).

Plaintiffs Jeffrey P. Augenstein and Stephanie R. Augenstein live at 9808 Allen Drive, Dublin, Delaware County, Ohio (the "Property"). (Compl. ¶20.) Defendant NRT Columbus, LLC, d/b/a Coldwell Banker King Thompson, is a real estate broker doing business in this District. (*Id.* at ¶8.)

Plaintiffs purchased the Property on March 5, 2009 for $657,000. (*Id.* at ¶20; HUD-1, line 101.) They paid total settlement charges of $854.58 in the transaction, including an Administrative Fee of $199 to Coldwell Banker. (HUD-1, lines 1400 and 705.) The sellers paid total settlement charges of $37,910.31 in the transaction, including a real estate brokerage commission of $26,280. (HUD-1, lines 1400 and 703.) Of the $26,280 commission, $19,710 was paid by the sellers to Coldwell Banker. (HUD-1, line 702.)

Plaintiffs admit that they "employed an agent of Defendants in connection with said purchase" (Compl. ¶22), but do not plead any other potentially pertinent facts related to such employment, such as the name of the agent, the terms of Coldwell Banker's employment, or the services that they received, or expected to receive, from Coldwell Banker. Plaintiffs do *not* claim that they received *no* services from Coldwell Banker.

Similarly, although plaintiffs plead that Coldwell Banker received the $19,710 commission from the sellers (Compl. ¶25), they do not plead any other potentially pertinent facts related to the commission, such as what services Coldwell Banker provided to the sellers in exchange for the commission.

Instead, plaintiffs just assert, in conclusory fashion, that the Administrative Fee is "a fee for which no service is rendered and/or . . . is a duplicative fee for services already rendered" as part of the commission.  (Compl. ¶¶30, 35.)

### III.      LAW AND ARGUMENT

**A.      The Standards For Dismissal Under Rules 8(a)(2) And 12(b)(6).**

Coldwell Banker's motion is brought under Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

This Court is well-acquainted with the applicable standard for considering a motion to dismiss pursuant to Rule 12(b)(6).  *See, e.g., Tibbs v. Sebelius,* 2010  U.S. Dist. LEXIS 42464, at \*\*6-8 (S.D.Ohio Apr. 30, 2010).  Put simply, the Court "must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party."  *Id.* at \*7 (citing *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 434 (6th Cir. 2008)).  If the Complaint fails to state a legally cognizable claim, it must be dismissed under Rule 12(b)(6).

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief."  (Emphasis added.)  What it means to *show* that the pleader is entitled to relief was addressed by the Supreme Court in *Ashcroft v. Iqbal,* _ U.S.__, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).

*Twombly* held that the adequacy of a pleading must be evaluated based upon the facts alleged, and not upon "labels and conclusions", or "a formulaic recitation of the elements of a cause of action."  550 U.S. at 555; *see also Hensley Mfg. v. ProPride, Inc.,* 579

- 4 -

F.3d 603, 609 (6th Cir. 2009) (the standard does not require the complaint to include detailed factual allegations, but it does require the complaint to include facts that would support its conclusions).

*Iqbal* outlined a two-step approach that federal courts must follow. *First,* a court should identify pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." 129 S.Ct. at 1950. *Second,* after having identified the "well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Id.* at 1949 (emphasis added).

**B.  Plaintiffs Have Failed To State A Claim For Violation Of Section 8(b) Of RESPA.**

**1.  RESPA Section 8**

Section 8 of RESPA is entitled "Prohibition against kickbacks and unearned fees" and provides in relevant part as follows:

(a)  Business referrals  **[Section 8(a)]**

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b)  Splitting charges  **[Section 8(b)]**

No person shall give *and* no person shall accept *any portion, split, or percentage* of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

- 5 -

12 U.S.C. §2607(a) and (b) (emphasis and bold text added).

2.    **Judicial interpretations of Section 8(b).**

In 2001, HUD issued a Real Estate Settlement Procedures Act Statement of

Policy 2001-1 ("2001 HUD SOP"), 66 Fed. Reg. 53,052 (Oct. 21, 2001), [2] which provided

the agency's views on certain issues under RESPA.  As discussed further below, most federal

courts have refused to defer to the 2001 HUD SOP in their interpretations of the statute.  The

2001 HUD SOP has proven most useful in its categorization of four types of fees that are

discussed in the case law: (1) split fees; (2) mark- ups; (3) undivided, unearned fees; and

(4) overcharges.  The 2001 HUD SOP describes the categories thus:

> (1) For *two or more* persons to *split* a fee for settlement services, any portion
> of which is unearned **[split fees]**; or (2) for *one* settlement service provider to
> *mark-up* the cost of the services performed or goods provided by another
> settlement service provider without providing additional actual, necessary, and
> distinct services, good, or facilities to justify the additional charge **[mark-
> ups]**; or (3) for *one* settlement service provider to charge the consumer a fee
> where *no, nominal, or duplicative work* is done **[undivided, unearned fee]**, or
> the fee is in *excess of the reasonable value* of goods or facilities provided or
> the services actually performed **[overcharges.]**

2001 HUD SOP, 66 Fed. Reg. 53,052, 53,059 (emphasis added, bold text added).

Federal courts have uniformly held that unearned split fees violate Section

8(b), because that is precisely what the text of the statute prohibits.

At the same time, the federal circuit courts have uniformly rejected the notion

that overcharges by a single provider violate Section 8(b).  According to the appeals courts,

RESPA is *not* a price-setting statute that prohibits overcharges or excessive pricing of

settlement services.  *See, e.g., Kruse v. Wells Fargo Home Mortg., Inc.,*  383 F.3d 49, 56 (2d

---

[2]    The 2001 HUD SOP was issued to interpret a regulation, at 24 C.F.R. §3500.14
("Regulation X"), which is cited in the Complaint at ¶28.

Cir. 2004) ("nothing in [the statutory] language authorizes courts to divide a 'charge' into

that they or some other person or entity deems to be its 'reasonable' and 'unreasonable'

components"); *Martinez v. Wells Fargo Home Mortg., Inc.,* 598 F.3d 549, 554 (9th Cir.

2010); *Friedman v. Market Street Mortg. Corp.,* 520 F.3d 1289, 1291 (11th Cir. 2008);

*Santiago v. GMAC Mortg. Group, Inc.,* 417 F.3d 384, 387 & n.3 (3d Cir. 2005); *Haug v.*

*Bank of America, N.A.,* 317 F.3d 832, 836 (8th Cir. 2003); *Krzalic v. Republic Title Co.,* 314

F.3d 875, 881 (7th Cir. 2002); *Boulware v. Crossland  Mortg. Corp.,* 291 F.3d 261, 268 (4th

Cir. 2002).

　　　There is a split among the circuits as to mark-ups of third parties' fees.  The

Fourth, Seventh, and Eighth Circuits have held that, because RESPA was intended as an anti-

kickback statute rather than a price-setting statute, and because the language of Section 8(b)

speaks of situations in which two or more parties split or share a fee, an allegedly unearned

fee charged and retained by a single provider is not prohibited by Section 8(b).  *Boulware,*

261 F.3d at 266; *Krzalic,* 314 F.3d at 881; *Haug,* 317 F.3d at 836.  The Second, Third, and

Eleventh Circuits have held that mark-ups may be actionable under Section 8(b), but only if

the plaintiff alleges that the provider retained the "marked-up" portion of the fee without

performing any services whatsoever to justify its retention.  *Kruse,* 383 F.3d at 55-57;

*Santiago,* 417 F.3d at 389;  *Sosa v. Chase Manhattan Mortg. Corp.,* 348 F.3d 979, 982-83

(11th Cir. 2003).

　　　Plaintiffs are attempting to categorize the Administrative Fee as an

"undivided, unearned fee" within the rubric of the 2001 HUD SOP.  Conceptually,

undivided, unearned fees are indistinguishable from overcharges: in both instances, a single

provider is alleged to have charged too much for the goods and services that it provides.

Plaintiffs might argue that the Administrative Fee is too much because it is "duplicative", whereas an overcharge is too much because it is "unreasonable" in amount, but the distinction is one without a difference.  Nothing in RESPA dictates the amounts or manner in which a settlement service provider may charge for its services.  Nothing prohibits a provider from charging two fees for the same services, or from charging a fee that someone else thinks was unnecessary.  As every circuit court to have the considered the issue has held, *supra* at 6-7, RESPA does not afford a cause of action for someone who believes that he or she has overpaid for settlement services.

> **3.     The analytical framework adopted by the Sixth Circuit for RESPA.**

The Sixth Circuit has not had occasion to address Section 8(b) of RESPA.  But it has recently addressed Sections 8(a) and 8(d) of RESPA, *see In re Carter,* 553 F.3d 979 (6th Cir. 2009), and in the process provided an analytical roadmap for deciding whether plaintiffs have stated a claim under Section 8(b) of  RESPA in this case.

The *Carter* case involved a claim under Section 8(a) of RESPA that the defendants were operating a sham title company as a vehicle for paying illegal kickbacks in exchange for the referral of settlement work.  At issue on appeal was whether the plaintiff-consumers had standing to sue under RESPA even if they did not allege an above-market rate charge for the services that they had received from the sham title company.  The Sixth Circuit identified the ultimate issue as one of statutory construction of RESPA's remedial provision, Section 8(d)(2).  553 F.3d at 985-86.  Section 8(d)(2) provides a private right of action in favor of anyone who has paid a charge that violates Section 8, to recover "an amount equal to three times the amount of any charge paid for such settlement service." §2607(d)(2).

- 8 -

The Sixth Circuit began its interpretation "by looking first to the plain language of the statute." 553 F.3d at 986. According to the Court, "If the language of the statute is clear, then the inquiry is complete, and the court should look no further." *Id.* (quoting *Brilliance Audio, Inc. v. Haights Cross Communications, Inc.,* 474 F.3d 365, 371 (6th Cir. 2007) (citations omitted)). Also according to the Court, "[w]hen the text of a statute contains an undefined term, that term receives its ordinary and natural meaning." *Id.* (quoting *Limited, Inc. v. C.I.R.,* 286 F.3d 324, 332 (6th Cir. 2007)). Applying these principles, and after consulting the dictionary for the ordinary definition of one term, the Sixth Circuit concluded that under Section 8(d)(2) of RESPA, a plaintiff may recover charges paid in violation of RESPA regardless of whether those charges were above-market or not.

Applying those same principles here leads to the conclusion -- one consistent with the weight of federal authority and with the decisions of two district courts in this Circuit -- that Section 8(b) of RESPA does not provide a cause of action against a settlement service provider who is alleged to have charged, collected, and retained an undivided, unearned fee.

### 4. <u>The Administrative Fee does not violate Section 8(b) because by its plain language, Section 8(b) covers only charges that are split between two persons.</u>

In at least three respects, the plain language of Section 8(b) makes clear that the provision is directed against fee splitting between a person who actually has provided some settlement services in connection with a transaction, and a person who has not.

*First,* Section 8(b) is entitled "Splitting charges." According to the ordinary definition from Webster's Ninth New Collegiate Dictionary, at 1139,[3] to "split" something is "to divide between persons" or to "apportion shares."

*Second,* Section 8(b) expressly speaks about "any portion, split, or percentage of any charge made or received", which again means divided fees, not undivided fees.

*Third,* Section 8(b) provides that "[n]o person shall give *and* no person shall accept. . . ." (Emphasis added.) As the Sixth Circuit has stated, "dictionary definitions, legal usage guides and case law compel us to start from the premise the 'and' usually does not mean 'or'." *OfficeMax, Inc. v. U. S.,* 428 F.3d 583, 588 (6th Cir. 2005) (interpreting federal excise tax statute). "'And' presumptively should be read in its ordinary injunctive sense unless the context in which the term is used or other provisions of the statute dictate a contrary interpretation." *Id.* at 589 (internal quotations and citations omitted).

It makes sense in the overall context of RESPA that Section 8(b) requires both a giver of a culpable fee and a receiver of a culpable fee for a violation to occur, and that both the giver and the receiver are made liable for the violation: a person who receives a portion of a settlement service fee without providing any services might reasonably be suspected to be receiving a kickback or referral fee. It also makes sense that an undivided fee charged, collected, and retained by a single provider does *not* fall within the prohibitions of the statute, because RESPA is not a price-setting statute.

Based upon this plain language, the Eighth, Fourth, and Seventh Circuits all have held that Section 8(b) of RESPA does not encompass fees that are not split or shared.

---

[3]    The Sixth Circuit relied upon this dictionary in interpreting Section 8(d)(2) of RESPA in the *Carter* case. *See Carter,* 553 F.3d at 986.

*See, e.g., Haug,* 317 F.3d at 836 (Section 8(b) "is an anti-kickback provision that unambiguously requires at least two parties to share a settlement fee in order to violate the statute . . . [T]he plain language of [Section 8(b)] requires plaintiffs to plead facts showing that the defendant illegally shared fees with a third party."); *Boulware,* 291 F.3d at 265 (same); *Krzalic,* 314 F. at 875 (same).

The only two district courts in this circuit to consider the issue have reached the same conclusion.  In *Morrison v. Brookstone Mortg. Co., Inc.,*  No. 2:03-CV-729,  2006 U.S. Dist. LEXIS 73389, 2006 WL 2850522, at *3 (S.D. Ohio Sept. 29, 2006), the court considered whether the defendant mortgage company's alleged mark-up of a $65 credit reporting fee violated Section 8(b) of RESPA.  After "carefully reviewing" the circuit court decisions, the court granted summary judgment to the defendant, holding that Section 8(b) "clearly contemplates the action of some third party" in a split of the fee.  *Id.* at *6. Similarly, in *Molosky v. Washington Mut. Bank,* No. 07-CV-11247, 2008 WL 183634 (E.D. Mich. Jan. 18, 2008), the court dismissed a Section 8(b) claim because plaintiff had failed to allege any fee splitting with a third party.  *Id.* at *7.  According to the court, "RESPA does not recognize a cause of action for overcharges or 'unearned fees' in the absence of an allegation that the lender split the fees in question with a third party."  *Id.* at *6.

A court "must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."  *Barnhart v. Sigmon Coal Co.,* 534 U.S. 428, 461-62 (2002) (quotations and citation omitted).  The language of Section 8(b) is unambiguous.  It requires an allegation that the Administrative Fee was split between

- 11 -

Coldwell Banker and a third party in order to state an actionable claim under RESPA.

Because the Complaint lacks such an allegation, it should be dismissed.

**5.    Other persuasive authorities support the conclusion that the Administrative Fee does not violate Section 8(b) of RESPA.**

Although the Sixth Circuit in *Carter* found the plain language of Section

8(d)(2) of RESPA to be dispositive of the issue presented, it went on to discuss what it

described as "persuasive authorities" that bolstered its conclusion.[4]  Several of these

persuasive authorities bolster the conclusion that the Administrative Fee does not violate

Section 8(b).

One persuasive authority is legislative history.  The RESPA Senate Report, S.

Rep. No. 93-866 as reprinted in 1974 U.S.C.C.A.N. 6546, 6547, which is generally regarded

as the most authoritative statement of RESPA's legislative history, contains many references

to situations involving split fees, and no references to situations involving undivided,

unearned fees.  The RESPA Senate Report states that Congress enacted Section 8(b)

> to prohibit all kickback or referral fee arrangements whereby any payment is
> made or "thing of value" furnished for the referral of real estate settlement
> business.  The section also prohibits a person or company that renders a
> settlement service from giving or rebating a portion of the charge to any other
> person except in return for services actually performed.

*Id.*

Another persuasive authority that the Sixth Circuit considered in *Carter* is the

overall intent of the statute.  553 F.3d at 988 (citing *Crandon v. U.S.,* 494 U.S. 152, 158

(1990) ("In determining the meaning of the statute, we look not only to the particular

---

[4]    The Sixth Circuit noted that it would rely upon such "persuasive authorities" to
decide the issue only if it had found Section 8(d)(2) to be "inescapably ambiguous."  *Carter,*
553 F.3d at 986 (citations and internal quotations omitted).

statutory language, but to the design of the statute as a whole and to its object and policy.")).

The "purpose" statement of RESPA contained in §2601(b), quoted *supra* at 1, does not

address undivided fees, but only addresses "kickbacks or referral fees."  As the Sixth Circuit

has recognized, "[g]enerally speaking", RESPA sought to address Congress' concerns over

certain practices (*i.e.*, the payment of kickbacks or referral fees) that harm consumers by

biasing the referral of settlement business.  *Id.*

   Because neither the legislative history nor the overall purpose of the statute

suggest that Congress intended Section 8(b) of RESPA to control what fees, how many fees,

or what amount of fees a single provider can charge, collect, and retain for its services, it is

unsurprising that the plain language of Section 8(b) does not cover allegedly undivided,

unearned fees.

### 6.  The 2001 HUD SOP is not entitled to deference.

   Plaintiffs can be expected to argue -- as they must to present any legal support

for their claim -- that this Court should defer to HUD's position, as set forth in the 2001

HUD SOP, that undivided, unearned fees violate Section 8(b).  Such deference is neither

required, nor appropriate.

   When reviewing an agency's interpretation of a statute, a court must determine

"whether Congress has directly spoken to the precise question at issue."  *Chevron, U.S.A.,*

*Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842 (1984).  "If the intent of

Congress is clear, that is the end of the matter; for the court, as well as the agency, must give

effect to the unambiguously expressed intent of Congress."  *Id.*

   The Court *need not* defer to the 2001 HUD SOP because it is only a "formal

pronouncement" by HUD of its interpretation of its own Regulation X.  *Chevron* deference

- 13 -

need not be given to these types of less formal agency interpretations because they lack the "force of law" of notice and comment rule-making.  *Thornton v. Graphic Communication Conf. of the Int'l Brh. of Teamsters Supplemental Ret. and Disability Fund,* 566 F.3d 597, 615 (6th Cir. 2009).  Judge Sargus of this Court declined to give deference to the 2001 HUD SOP in *Morrison* for this reason, among others.  *See Morrison,* 2006 U.S. Dist. LEXIS 73389, at *23 (citing *United States v. Mead Corp.,* 533 U.S. 218, 226 (2001));  *accord Krzalic,* 314 F.3d at 881 ("If an agency is to assume the judicial prerogative of statutory interpretation that *Chevron* bestowed upon it, it must use . . . something more formal, more deliberative, than a simple announcement.").

The Court *should not* defer to the 2001 HUD SOP because, to the extent that it purports to include undivided fees within the scope of Section 8(b), it contradicts the intent of RESPA.  *See supra* at 12.  "The Supreme Court has explained that the judiciary is the final authority of issues of statutory construction and must reject administrative constructions which are contrary to clear legislative intent."  *Battle Creek Health Sys. v. Leavitt,* 498 F.3d 401, 408-09 (6th Cir. 2002) (internal quotations and citations omitted).  Many circuit courts have found that, to a greater or lesser extent, the 2001 HUD SOP overstates the scope of Section 8(b).[5]  For this reason, they have declined to fully defer to HUD in interpreting Section 8(b).  *See, e.g., Martinez,* 598 F.3d at 554 (refusing to give *Chevron* deference to 2001 HUD SOP on alleged overcharge claim); *Santiago,* 417 F.3d at 387 & n.3 (same); *Kruse,* 383 F.3d at 57 (same); *Haug,* 317 F.3d at 838-39 (refusing to give *Chevron* deference

---

[5]     In *Carter,* the Sixth Circuit noted that courts and litigants may properly look at HUD's views in order to obtain "guidance" about RESPA.  553 F.3d at 987-88.  But it did not hold that deference to HUD's views was required, presumably because it had found the plain language of Section 8(d)(2) to be unambiguous.

to 2001 HUD SOP on alleged mark-up claim); *Boulware,* 291 F.3d at 265 (same); *Krzalic,* 314 F.3d at 878-79 (same).

If Congress had wanted a single provider to be liable under Section 8(b) for allegedly charging, collecting, and retaining an undivided fee, it surely would not have focused upon "kickbacks" and "referral fees", or spoken expressly about a "portion, split, or percentage" of charges. It would simply have stated that "no person shall receive a fee other than for services actually performed." HUD overreached in its policy statement by attempting to sweep undivided, unearned fees and overcharges within the scope of Section 8(b). Plaintiffs likewise are overreaching here in attempting to base a Section 8(b) claim upon Coldwell Banker's Administrative Fee.

### 7. <u>Plaintiffs' suggested interpretation of Section 8(b) would lead to metaphysical inquiries and absurd results.</u>

In interpreting statutes, courts "do not want to insult the legislature by attributing absurdities to it." *Krzalic,* 314 F.3d at 880. Plaintiffs' suggested interpretation of Section 8(b) would lead to absurdities of litigation and result, which is yet another reason to reject it.

Consider what would be involved in attempting to adjudicate whether Coldwell Banker's Administrative Fee was "unearned." The 2001 HUD SOP suggests that a fee might be considered "unearned" where "no, nominal, or duplicative work" has been done. *See* 66 Fed. Reg. at 53,059. Plaintiffs do *not* claim that Coldwell Banker provided them with *no* services. And nominal or duplicative work is still work. Trying to adjudicate whether a fee was justified by the allegedly nominal or duplicative work performed would only be permissible if RESPA was a price-setting statute, which it most assuredly is not.

Plaintiffs attempt to sidestep this problem by alleging that the Administrative Fee is a "duplicative fee", which is different than alleging that Coldwell Banker did duplicative work.  RESPA allows Coldwell Banker to charge whatever types and amounts of fees that it wants in exchange for its services, and neither prohibits, nor requires, either the bundling or the unbundling of fees.  That being the case, how can it ever be said that one type of fee that was purposefully (as opposed to mistakenly) charged by a single provider is "duplicative" of another type of fee purposefully charged by the same provider?  To take an example, a surcharge is not "unearned" simply because it is separately stated, it is just an increase in the overall earned compensation.  Plaintiffs apparently want the trier of fact to attempt to determine what each fee is "for", and if the fees are "for" the same thing, to conclude that one of them is "unearned".  But even if two fees were charged for the same service, why does that make either of them "unearned"?  Why aren't they just two fees that, taken together, add up to the total compensation for that service?

As this discussion demonstrates, plaintiffs' theory of liability ultimately turns upon metaphysical issues, not upon factual or legal ones that courts are equipped to adjudicate.  There is no reason to think that in enacting Section 8(b), Congress intended to tackle such issues.

Plaintiffs' suggested interpretation of Section 8(b) would also lead to the absurd result that, if a violation of the statute occurred, plaintiffs themselves are violators.  This is so because if the Administrative Fee falls within the scope of Section 8(b), then Section 8(b) prohibited plaintiffs from paying it.  *See* §2607(b) ("No person shall give and no person shall accept . . . .).  But "[i]t would be irrational to conclude that Congress intended consumers to be potentially liable under RESPA for paying unearned fees."  *Boulware,* 291

- 16 -

F.3d at 265; *accord Krzalic,* 314 F.3d at 879 ("On the plaintiffs' understanding, they themselves violated the statute . . . ."). The only rational interpretation of Section 8(b) is that it prohibits a provider from splitting its fees with a third party that performed no services, not that it prohibits a provider from charging, collecting, and retaining its own fees, whatever they might be.

Because the Complaint does not plead a theory of liability that is cognizable under Section 8(b), it should be dismissed.

### C.   Plaintiffs Have Failed To Plead An Adequate Factual Basis For Their Alleged RESPA Claim.

Even if a single settlement service provider who had charged, collected, and retained an undivided, unearned fee could be found to violate Section 8(b) of RESPA, the Complaint should be dismissed because it fails to plead any facts tending to *show* that the Administrative Fee was unearned. Thus, the Complaint fails to meet the pleading requirements of Rule 8(a)(2), as articulated in *Twombly* and *Iqbal.*

In *Hensley Mfg.,* 579 F.3d 603, the Sixth Circuit applied *Twombly* and *Iqbal* to a complaint alleging trademark infringement and unfair competition under the Lanham Act. The Sixth Circuit affirmed the district court's dismissal of the complaint on several grounds, including that the complaint failed to allege facts sufficient to show that defendant's use of the "Hensley" name created a likelihood of confusion as to the source of defendant's products. All the complaint contained was an allegation that the defendant's use of the name created "a strong likelihood of confusion in the marketplace", which the Sixth Circuit characterized as "conclusory", and thus insufficient under *Iqbal.* 579 F.3d at 611. The Sixth

- 17 -

Circuit also noted that the exhibits attached to the Complaint actually contained information that tended to belie the Complaint's conclusory allegations.  *Id.*

The situation here is comparable to the situation in *Hensley Mfg*.  Here, the Complaint fails to allege any facts sufficient to show that the Administrative Fee was unearned.  Instead, it relies upon conclusory allegations that the Administrative Fee was "duplicative" of the commission, and hence "unearned."  Also here, the HUD-1 attached to the Complaint contains information that tends to belie those conclusory allegations.  Specifically, it shows two separate fees -- the Administrative Fee and the commission -- being paid to Coldwell Banker by separate parties -- plaintiffs and the sellers.  Given that plaintiffs and the sellers are different parties, they cannot, as a matter of logic, have received the same services from Coldwell Banker.  Moreover, it is illogical for plaintiffs to claim that they paid "duplicative", and hence "unearned", compensation to Coldwell Banker, when by their own admission they "employed" Coldwell Banker (Compl. ¶22) and paid it only one fee.  Finally, common sense tells one that the time, efforts, and expenses incurred by a real estate broker in working with buyers like the plaintiffs are not co-extensive with what sellers pay for.  Sellers pay real estate brokers a commission for selling their property, regardless of the time, efforts, and expenses spent by the brokers in procuring the sale.

Plaintiffs appear to assume that because real estate brokers traditionally are paid by commissions, that is the only form of compensation that they can ever be paid without violating RESPA.  In the complete absence of facts, plaintiffs want this Court to make the inferential leap that any compensation that a real estate broker receives in a transaction other than a commission *must* be duplicative or for no services.  Pursuant to *Twombly,* however, complaints that require courts to fill factual gaps or make factual

assumptions in order to establish the elements of a claim should be dismissed.  *See Twombly,* 550 U.S. at 557-58 (dismissing a price-fixing claim brought under Sherman Act Section 1 because the plaintiffs relied on an allegation of parallel conduct and a conclusory assertion of a conspiracy, rather than any facts supporting the existence of a conspiratorial agreement).

The Complaint here lacks any facts that would tend to show that the Administrative Fee violates RESPA, even if plaintiffs' interpretation of RESPA is correct. Accordingly, Coldwell Banker's motion to dismiss it should be granted.

## IV.  CONCLUSION

Because the Complaint fails to state a legally cognizable claim against Coldwell Banker under Section 8(b) of RESPA, it should be dismissed with prejudice.  And because plaintiffs have failed to plead facts showing that they might possess such a claim (even if, *arguendo,* such a claim could exist), their Complaint should be dismissed for that reason, too.

OF COUNSEL:                          Respectfully submitted,


HAHN LOESER & PARKS LLP          /s/ Erica L. Calderas
                                 Erica L. Calderas (#006406) (Trial Attorney)
                                 elcalderas@hahnlaw.com
                                 200 Public Square, Suite 2800
                                 Cleveland, OH  44114-2316
                                 Phone:  216.274.2533
                                 Fax:  216.241.2824

                                 Stephen E. Chappelear (#0012205)
                                 sechappelear@hahnlaw.com
                                 65 East State Street, Suite 1400
                                 Columbus, OH  43215
                                 Phone:  614.221.0240
                                 Fax:  614.221.5909

                                 - and -

FAEGRE & BENSON LLP

Wendy J. Wildung (MN Bar #117055)
*(pro hac vice)*
wwildung@faegre.com
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Phone:  612.766.7000


*Attorneys for Defendants*

CLE - 2768385.1

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2010, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Erica L. Calderas

*One of the Attorneys for Defendants Coldwell Banker Real Estate LLC, NRT LLC, and NRT Columbus, LLC*