IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Jeffrey P. Augenstein and** | : | |
| **Stephanie Augenstein,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Case No. 2:10-cv-191 |
| v. | : | |
| | : | |
| **Coldwell Banker Real Estate LLC,** | : | |
| **NRT LLC, and NRT Columbus, LLC,** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | Magistrate Judge King |
| Defendants. | : | |
| | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant NRT Columbus, LLC's, doing business as Coldwell Banker King Thompson ("Coldwell Banker"), Motion to Dismiss Plaintiffs Jeffrey and Stephanie Augensteins' ("the Augensteins") Complaint (Dkt. 2). Plaintiffs sued Coldwell Banker Real Estate LLC, NRT LLC, and NRC Columbus, LLC alleging a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607, and its implementing regulations, 24 C.F.R. § 3500 et seq. The Augensteins voluntarily dismissed, without prejudice, all claims against Coldwell Banker Real Estate LLC and NRT LLC. Only the claim against Coldwell Banker remains. Defendant Coldwell Banker moves to dismiss pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6). For the reasons set forth below, the motion is **DENIED**.

## II. BACKGROUND

According to the Complaint, the Augensteins purchased real estate in Delaware County, Ohio on March 5, 2009.  The Augensteins entered into a federally related loan in order to finance the purchase.  In connection to the sale and settlement, the Augensteins obtained settlement services from Coldwell Banker, as well as Coldwell Banker Real Estate LLC and NRT LLC.[1]  At closing, Coldwell Banker charged the Augensteins an administrative fee ("Admin Fee") of $199, in addition to the Total Sales/Broker Commission based on price ("total sales/broker commission") of $19,710.  The Augensteins allege that Coldwell Banker did not provide any services in exchange for the Admin Fee.  Thus, they argue that charging and accepting the fee violated RESPA because: (1) it is a fee for which no services are rendered; and/or (2) it is a duplicative fee for services already rendered as part of the total sales/broker's commission.

The Augensteins brought this action on behalf of a nationwide class of similarly situated borrowers who paid an administrative fee to Defendants in connection with federally related mortgage loans within the statute of limitations.

On March 3, 2010, the Augensteins filed their Complaint.  On May 24, 2010, Coldwell Banker moved to dismiss the Complaint.

---

[1] According to RESPA, "settlement services" include "any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing of settlement."  12 U.S.C. § 2602(3).

### III. STANDARD OF REVIEW

A case may be dismissed if the complaint does not state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)*; Murphy v. Sofamor Danek Gp.,Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). However, the Court is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

Although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). The complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007)). While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555 (2007). A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (*citing Twombly*, 550 U.S at 556).

## IV. LAW AND ANALYSIS

Congress passed RESPA in order to reform the real estate settlement process. The purpose of the statute was to insure that consumers were "provided with greater and more timely information on the nature and costs of the settlement process" and "protected from unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601(a). Plaintiffs' claim is based on RESPA § 8(b), which states:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 8(b).

The central issue in this case is whether a violation of § 8(b) occurs when a single settlement service provider charges a fee for which no services are performed in relation to a federally related mortgage loan (hereinafter referred to as an "undivided unearned fee"). Specifically, does a violation of § 8(b) require two parties exchanging an unearned fee or a single party accepting an unearned fee. Coldwell Banker urges the Court to find that by its plain language, purpose, and history, § 8(b) only prohibits unearned fees that are split or shared by culpable parties. If the Court finds that unearned fees collected by a single party violates § 8(b), Coldwell Banker argues that Plaintiffs have not pleaded facts sufficient to state a claim. The Augensteins argue that the plain language of RESPA § 8(b) prohibits all charges assessed for which no services are performed, and does not require a split fee. Further, they argue that the Court should defer to the Department of Housing and Urban Development's (HUD)

interpretation of § 8(b) if it finds the language ambiguous. In its Statement of Policy, HUD explained:

> Section 8(b) prohibits any person from giving or accepting any fees other than payments for goods and facilities provided or services actually performed. Payments that are unearned fees occur in, but are not limited to, cases where: (1) Two or more persons split a fee for settlement services, any portion of which is unearned; or (2) one settlement service provider marks-up the cost of the services performed or goods provided by another settlement service provider without providing additional actual, necessary, and distinct services, goods, or facilities to justify the additional charge; or (3) **one settlement service provider charges the consumer a fee where no, nominal, or duplicative work is done**, or the fee is in excess of the reasonable value of goods or facilities provided or the services actually performed.

66 FR 53052-01 (emphasis added).

### A. Applicable Legal Standards

In order to determine whether a single settlement service provider charging a fee for which no services are performed violates § 8(b), the Court must first look to the plain language of the statute. *See U.S. v. Turner*, 465 F.3d 667, 671 (6th Cir 2006). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Res. Def. Counsel, Inc.*, 467 U.S. 837, 843-43 (1984); *see Brilliance Audio, Inc. v. Haights Cross Commc'n, Inc.*, 474 F.3d 365, 371 (6th Cir. 2007) (finding that if the text clearly and unambiguously prohibits the alleged practices, "then the inquiry is complete, and the court should look no further"). If the language is unclear, then the Court may turn to traditional tools of statutory interpretation to ascertain Congress's intentions. These include legislative history, policy rationales, and context. *See Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 986 (6th Cir. 2009).

If the text is unclear and the traditional tools of statutory interpretation do not reveal Congress's clear intent, the Court must determine whether HUD's Statement of Policy is entitled to deference. In certain situations, deference to "permissible" agency interpretations is mandatory , *see Chevron*, 467 U.S. at 843-44, whereas in others, deference to agency interpretations extends only so far as the interpretations' "power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Because, as the Court sets forth below, Congress's intent is clear, *Chevron* deference does not come into play.

### B. The Plain Language of RESPA Section 8(b)

The interpretation of RESPA § 8(b) is a novel issue in the Sixth Circuit, and the Circuits that have considered the statutory provision are divided as to whether one or two culpable service providers are required for a violation to exist. The Fourth, Seventh, and Eighth Circuits have found that the text of § 8(b) clearly and unambiguously requires two culpable parties. *Haug v. Bank of Am.*, 317 F.3d 882 (8th Cir. 2003)*; Krzalic v. Republic Title Co.*, 314 F.3d 875 (7th Cir. 2002)*, cert. denied*, 539 U.S. 958 (2003)*; Boulware v. Crossland Mortg. Corp.*, 291 F.3d 261 (4th Cir. 2002)*.* These Courts have held that the use of the word "and" in the phrase "no person shall give and no person shall receive" requires that there must be one party that gives and one party that receives a settlement services fee for which no services are preformed for a violation of § 8(b) to exist. *See Haug*, 317 F.3d at 836 ("Section 8(b) . . . unambiguously requires at least two parties to share a settlement fee in order to violate the statute); *Boulware*, 291 F.3d at 266 ("The use of the conjunctive 'and' indicates that Congress was clearly aiming at an exchange or transaction, not a unilateral act").

The Second, Third, and Eleventh Circuits, however, have held that § 8(b) requires only one settlement service provider. *Santiago v. GMAC Mortg. Group, Inc.*, 417 F.3d 384 (3d Cir. 2005); *Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49 (2d Cir. 2004); *Sosa v. Chase Manhattan Mortg. Corp.*, 348 F.3d 979 (11th Cir. 2003). The Third and Eleventh Circuits reason that "[t]he 'and' . . . operates to create two separate prohibitions. . . . Giving a portion of a charge is prohibited regardless of whether there is a culpable acceptor, and accepting a portion of a charge is prohibited regardless of whether there is a culpable giver." *Sosa*, 348 F.3d at 982; *see also Santiago*, 417 F.3d at 388 ("Section 8(b) operates to create two separate prohibitions."). After considering these decisions, the Second Circuit found that "[t]he words of the statute do not seem to compel either" one or two culpable settlement service providers for a violation, and were ambiguous. *Kruse*, 383 F.3d at 58; *see also Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 116-20 (2d Cir. 2007). The *Kruse* Court then analyzed whether *Chevron* deference was due to the HUD Statement of Policy using four factors derived from *United States v. Mead Corp.* and *Barnhart v. Walton*: (1) the evidence of Congressional intent; (2) the consideration the agency has given the question over time; (3) the expertise of the agency; and (4) other courts' treatment of the agency interpretation. *Kruse*, 383 F.3d at 58-62 (citing *United States v. Mead Corp.*, 533 U.S. 218 (2001); *Barnhart v. Walton*, 535 U.S. 212 (2002)). Applying these factors, it concluded that the HUD Statement of Policy was entitled to *Chevron* deference, and thus a single settlement service provider could violate § 8(b). *Kruse*, 383 F.3d at 58-62; *see also Cohen*, 498 F.3d at 124-26 (finding that HUD's Statement of Policy was entitled to *Chevron* deference as to undivided unearned fees).

This Court finds that the text of RESPA §8(b) clearly and unambiguously prohibits undivided unearned fees. The statute explicitly states that "[n]o person shall give and no person shall accept" any part of a fee "other than for services actually performed." RESPA § 8(b). In *OfficeMax, Inc. v. United States*, the Sixth Circuit said that "and" should presumptively be read conjunctively. 428 F.3d 583, 589 (citing *Crooks v. Harrelson*, 282 U.S. 55, 58 (1930)). But if this reading would lead to incoherent or absurd results, then "and" should be read disjunctively to mean "or." *Id.* at 589-90. Keeping in mind that "[i]t has long been a 'familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes,'" *Carter*, 553 F.3d at 985 (quoting *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967)),[2] it would lead to absurd results if two settlement service providers could violate § 8(b) by sharing an unearned fee, but one settlement service provider could freely charge consumers such fees. Thus, the "and" in § 8(b) creates two prohibitions: it prohibits a settlement service provider from charging a fee for which no work is performed, and it prohibits a settlement service provider from receiving such a fee. The violation exists regardless of whether the provider is sharing that fee with another. *See Sosa*, 348 F.3d at 982; *see also Santiago*, 417 F.3d at 388.

Accordingly, the Augensteins have stated a claim under RESPA § 8(b) in alleging that they were charged a fee for which no services were provided. Coldwell Banker urges this Court to treat the Augensteins' allegations conceptually the same as overcharges. An "overcharge" is when a person charges fees that are greater than the reasonable value of services provided. *See*

---

[2] The Sixth Circuit has stated that "[t]here is little doubt as to the remedial nature of RESPA's provisions given Congress's finding that 'significant reforms in the real estate settlement process are needed,' and that it specifically enacted RESPA 'to effect certain changes in the settlement process for residential real estate.'" *Carter*, 553 F.3d at 986 n. 5 (quoting § 12 U.S.C. § 2601(a)).

*Kruse*, 383 F.3d at 56; *Santiago*, 417 F.3d at 387. Courts have uniformly found that the text of §8(b) does not support a claim for overcharges. *See Martinez*, 598 F.3d at 554; *Friedman v. Market Street Mortg. Corp.*, 520 F.3d 1289, 1291 (11th Cir. 2008); *Santiago*, 417 F.3d at 387; *Kruse*, 383 F.3d at 56; *Huag*, 317 F.3d at 836; *Krzalic*, 314 F.3d at 881; *Boulware*, 291 F.3d at 268. Relying on these cases, Coldwell Banker argues that the text of § 8(b) does not support the Augensteins in this case. But the Augensteins do not make this claim. They do not challenge the reasonableness of fees in connection to the quality of the services provided or argue that they were overcharged. Instead, the Augensteins allege that they received *no* services in connection with the Admin Fee. The text of § 8 (b) supports a claim for such undivided unearned fees.[3] *See Santiago*, 417 F.3d at 387 ("As a whole, Section 8(b) states that no person can accept a fraction of a charge for services provided, unless they have actually provided services."); *Martinez*, 598 F.3d at 553 ("The language of Section 8(b) prohibits only the practice of giving or accepting money where no service whatsoever is performed in exchange for that money.").

---

[3]This Court has found that the text of RESPA allows a cause of action for undivided unearned fees. Even if the text was ambiguous, however, *Chevron* deference to HUD's interpretation of undivided unearned fees as expressed in the 2001 Statement of Policy would be appropriate. *See Cohen,* 498 F.3d at 116-20. A number of factors are relevant to the determination of whether *Chevron* deference extends to less formal interpretations such as the Statement of Policy: (1) the evidence of Congressional intent; (2) the expertise of the agency; (3) the consideration the agency has given the question over time; and (4) the rationale of the interpretation. *See Mead*, 533 U.S. at 231-234; *Barnhart*, 535 U.S. at 222. *See also Hosp. Corp. of America & Subsidiaries v. C.I.R.*, 348 F.3d 136, 145 (6th Cir.) (applying *Mead* factors to find *Chevron* deference). In this case, all factors point toward *Chevron* deference. First, Congress delegated authority to HUD to issue interpretations with the force of law, and HUD issued its 2001 Statement of Policy pursuant to that authority. Second, HUD has developed extensive experience in the home mortgage industry. Third, HUD has carefully considered the enforcement of RESPA for an extended period of time, and fourth, the Statement of Policy is a well-reasoned analysis of a complex issue.

## V. CONCLUSION

In their complaint, the Augensteins allege that Coldwell Banker charged them an Admin Fee of $199, but performed no work in connection to that fee. The Admin Fee was duplicative of services rendered as part of the total sales/broker's commission fee of $19,710. Accordingly, this Court finds that the Augensteins have alleged a cause of action under RESPA § 8(b) and have set forth sufficient factual allegations. Therefore, this Court **DENIES** Coldwell Banker's Motion to Dismiss (Dkt.9).

**IT IS SO ORDERED.**

                                                 s/Algenon L. Marbley
                                                **ALGENON L. MARBLEY**
                                                **UNITED STATES DISTRICT COURT**

**Dated: November 9, 2010**